Affirmed and Opinion of April 17, 2003 Withdrawn; Corrected Opinion
filed June 26, 2003
















Affirmed and
Opinion of April 17, 2003 Withdrawn;
Corrected Opinion filed June 26, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00186-CR

____________

 

CHRISTI ANN LANDERS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

_________________________________________________

 

On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 864,216

 

_________________________________________________

 

C O R R E C T E D   O P I N
I O N

            Our
opinion of April 17,
 2003 is withdrawn due to a typographical error, and this
corrected opinion is substituted in its place. 





 








            Appellant,
Christi Ann Landers, was charged with the felony offense of driving while
intoxicated.  Tex. Penal Code Ann. §§ 49.04(a) and 49.09(b).[1]  She pled true to the two prior DWI
convictions alleged to enhance the primary offense to a felony.  A jury rejected her plea of not guilty to the
primary offense alleged, and she pled true to the punishment enhancement
paragraph alleging a conviction for possession of cocaine, and to a conviction
for driving while her license was suspended. 
The jury assessed her punishment at six years’ confinement.  Appellant asserts seven issues on
appeal.  

            We
affirm.

I.  Factual Background

            During
the evening of September 19, 2000, a truck driven by appellant swerved and
struck a roadside post in the 200 block of North Main Street in Highlands,
Texas.  The State’s and appellant’s
evidence differed by two hours as to time of the accident’s occurrence.  The State presented evidence that appellant
was operating the vehicle at approximately 9:45 p.m., and struck the post because she had lost the normal
use of her physical and mental faculties from having earlier ingested
drugs.  Three police officers and an
emergency room physician testified to her impaired mental and physical
faculties that night and early the next morning.

            Appellant’s
evidence fixed the time of the accident as two hours earlier than the State’s
testimony.  Appellant presented evidence
that her truck had recurring mechanical problems — pulling to the right,
steering difficulty, acceleration problems, and a malfunctioning battery.  She testified that her truck’s engine
repeatedly died as she drove home from work and that she struck the post
because the truck’s steering mechanism caused the truck to pull to the right as
she attempted to restart the engine.  She
testified that a couple traveling in a pick-up truck behind her stopped to
assist her, helped her move her pick-up truck to the side of the road, and
drove her home afterward.  She testified
that she changed clothes at home, took the prescription medication that caused
her later-observed condition, and spent time with a neighbor before the police
came and returned her to the accident scene.

                                          II.  Sufficiency of the Evidence

            In
her first two issues, appellant contends the evidence was legally and factually
insufficient to prove beyond a reasonable doubt that she had lost the normal
use of her physical and mental faculties at the time the State’s sole
eyewitness to her driving observed her. 
She asserts the eyewitness to her driving, Wayne Baxter, “failed to
articulate sufficient facts” to show that she was intoxicated. 

            The
indictment alleged appellant was intoxicated by not having the normal use of
her mental and physical faculties by reason of the introduction of
benzodiazepine or a combination of drugs into her body.[2]  

A.  Standards of Review

            When
reviewing the legal sufficiency of the evidence, we view the evidence in a
light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  We
do not resolve conflicts of fact or assign credibility to witnesses, as it is
the function of the trier of fact to accept or reject
any, part, or all of any witness’s testimony. 
See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Lucero
v. State, 915 S.W.2d 612, 614 (Tex. App.—El Paso 1996, pet. ref’d).  We determine
only if the explicit and implicit findings of the trier
of fact are rational by viewing all the evidence in a light most favorable to
the verdict.  See Lucero, 915 S.W.2d at 614.  Any inconsistencies in the evidence are
resolved in favor of the verdict.  Id.

            In
reviewing the factual sufficiency of the evidence, we view all the evidence for
and against the finding in a neutral light and set aside the verdict only if
“proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or . . . although adequate if taken alone, is greatly outweighed
by contrary proof.”  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  We
review the fact-finder’s weighing of the evidence and are authorized to
disagree with the factfinder’s determination.  Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  

            Our
review, however, must be appropriately deferential so as to avoid substituting
our own judgment for that of the factfinder.  Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).  The factfinder
is the judge of the credibility of the witnesses and may “believe all, some, or
none of the testimony.”  Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991).  An appellate court may not interfere with a
jury’s resolution of conflicts in the evidence. 
Davila v. State, 930 S.W.2d
641, 647 (Tex. App.—El Paso 1996, pet. ref’d); Taylor v. State, 921 S.W.2d 740, 746
(Tex. App.—El Paso 1996, no pet.).

                                                           B.  Legal Sufficiency

            In her first issue,
appellant asserts there is no evidence that, at the time she operated a motor
vehicle, she had lost the normal use of her physical or mental faculties due to
the use of drugs or alcohol, or a combination of both.

            Wayne
Baxter testified that at approximately 9:45 p.m., he saw
appellant driving very slowly and erratically across lanes of the road; he was
forced to the side of the road to avoid an accident when she swerved toward his
car as he tried to pass her.  Baxter saw
appellant’s truck hit a pole beside the road, after which he saw a woman of
appellant’s stature get out of the truck, appearing dazed and having difficulty
moving around.  Baxter testified he
regularly gets off of work at 9:00 p.m., it takes
him 45-50 minutes to drive home, and he was about ten minutes from home when
the incident occurred.  Baxter parked
beside the road and called 911.  He then
saw a man and a woman drive up in a small truck, push appellant’s truck to the
side of the road, and drive off with her. 
Baxter followed them, saw them drive into a nearby trailer park, and
returned to the scene of the accident. 
There, he told Deputy Constable Landers, who had arrived in the
meantime, what happened. 

            Deputy
Landers testified he received a dispatch call about 10:00 p.m. and arrived at the scene within five minutes.  He spoke to Baxter briefly, went to
appellant’s trailer park, and found her sitting in the truck that drove her
home.  There, within fifteen minutes of
the accident, Landers observed that appellant’s eyes were wide open, that she
was semi-coherent and that she spoke with slurred words.  

            Landers
returned appellant to the scene of the accident about 10:25 p.m., and turned the investigation over
to Deputy Sheriff Seward, who first observed appellant approximately thirty
minutes after the accident.  Seward
testified that appellant was unable to stand without assistance, fell back onto
the patrol car, and slurred her speech. 
In his opinion, appellant had lost the normal use of her mental or
physical faculties.  Seward took her into
custody for observation, and drove her to the police station; because he
smelled no alcohol on her breath, he called ahead for a drug recognition
expert.

            Deputy
Sheriff Barnett, a drug recognition specialist, observed appellant at the
police station within an hour and twenty minutes of the accident.  Barnett testified that appellant slurred her
words, stumbled, had poor coordination, and was sluggish.  Her performance was poor on field sobriety
tests Barnett conducted and videotaped. 
The videotape was admitted into evidence.  Appellant admitted to Barnett that she had
taken Prozac, Valium, and pain medication that evening.  At the police station, she remained unable to
walk without assistance, was too incapacitated to give a urine sample, and
became delirious and incoherent.  Because
Barnett feared appellant had had an overdose, he had her transported to the
hospital.  There, the emergency room
physician, Dr. Nguyen, observed that appellant arrived asleep and had to be
awakened.  Appellant told Dr. Nguyen that
she had taken fifteen tablets of Propacet (a
combination of Tylenol and opiate drug) six hours earlier, at about 7:00
p.m.  Dr. Nguyen testified that Propacet alone, and in combination with Valium, would cause
drowsiness; that the maximum effect of the drugs would be approximately two
hours after ingestion, and would continue for some time.  In Dr. Nguyen’s opinion, appellant had lost
the normal use of her mental faculties based on an overdose of the opiate drug,
Propacet. 

            Viewed in the light most favorable
to the verdict, the evidence is legally sufficient to support the jury’s
verdict.  Lucero, 915 S.W.2d at 614. 
We overrule appellant’s first issue.

C.  Factual Sufficiency

            Appellant
testified and presented an alternative explanation to the State’s as to when
and why the accident occurred, and her condition at the time of the accident,
at the hospital, and when the officers observed her.  She claimed the accident took place two hours
earlier, at about 7:45–8:00
 p.m.  She testified that
the clutch was out on her truck, and her momentary inattention plus the poor
working condition of her truck caused the accident.  Her parents testified that the truck was in
poor repair and had been in the shop; that her mother had driven her to work
that morning; and that her father had her truck towed to the parking lot at her
work that day.  

            Additionally,
appellant’s neighbor testified that she visited with appellant that evening
between 8 p.m. and 8:45 p.m., and that she observed no signs of
intoxication.  Appellant’s explanation
for her condition was that she took her nightly prescription medication at home
during the two hours after the accident occurred, and thus came under the
undisputed influence of drugs after the accident.  Moreover, no peace officer smelled alcohol on
her breath, and she passed an intoxilizer test.  Therefore, she argues, the evidence was
factually insufficient to support a finding that she lost her mental faculties
while operating a motor vehicle.  

            The
jury is the sole judge of the facts, the witnesses’ credibility, and the weight
to be given the evidence.  Clewis v. State, 922 S.W.2d at 129.  The jury may believe or disbelieve any
portion of the witnesses’ testimony.  Beckham v. State, 29 S.W.3d 148, 151
(Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d).  Contradictions or conflicts in the witnesses’
testimony do not destroy the sufficiency of the evidence, but go to its weight
and to the credibility the jury assigns to the witnesses.  Id.  The jury exclusively resolves conflicting
testimony, and a reviewing court may not substitute its conclusions for the
jury’s, nor interfere with the jury’s resolution of conflicts in the
evidence.  Id. at 152.

            Based
on appellant’s own admission to Dr. Nguyen that she took 15 tablets of Propacet at about 7 p.m. that night, and the observations
of the independent eyewitnesses — Baxter, the three peace officers, and Dr.
Nguyen — we conclude the evidence was factually sufficient to support the
finding that she was intoxicated while operating her vehicle at the time of the
accident.  We overrule appellant’s second
issue.




                        III.  Failure to Exercise a Peremptory Challenge
Against A

                             Veniremember After A Challenge for Cause is Denied

 

            Appellant’s issues three, four, and
five assert error in allowing “an openly biased” veniremember
to be empaneled as a juror.

            At the conclusion of jury voir dire, the trial court heard counsel for both sides
state their challenges for cause at a bench conference.  Tex.
Code. Crim. Proc. Ann., art. 35.16(a) (Vernon 1989); Tex. Code Crim. Proc.
Ann., art. 35.16(c) (Vernon Supp.
2001).  Both sides agreed to challenge
certain veniremembers, and the trial court sustained
other challenges by both State and defense, but refused appellant’s[3]
trial counsel’s challenge for cause against veniremember
number 37, Ms. Campos.  Thereafter,
appellant’s trial counsel exercised only two of his ten peremptory
challenges.  Tex. Code. Crim. Proc. Ann.,
art.  35.15(b) (Vernon Supp. 2001).  Neither was used against Ms. Campos.  When Ms. Campos and the others selected were
seated in the jury box, the trial court asked if either side objected to the
panel.  Neither side objected, and the
jury was sworn.

            Appellant claims in her third issue
that her trial attorney rendered ineffective assistance of counsel by failing
to exercise a peremptory challenge to strike Ms. Campos, “an openly biased
juror.”  




A.  Ineffective
Assistance of Counsel — Standard of
Review

            To demonstrate ineffective
assistance of counsel, an appellant must show, first, that counsel’s
performance was deficient, i.e., it
fell below an objective standard of reasonableness, and, second, that appellant
was prejudiced in that there is a reasonable probability that, but for
counsel’s errors, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 687 (1984); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim.
App. 2000). To be sustained, an allegation of ineffective assistance must be
affirmatively demonstrated in the record. 
McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996).

            In reviewing ineffectiveness claims,
scrutiny of counsel’s performance must be highly deferential.  Strickland,
466 U.S. at 689; Tong, 25 S.W.3d at
712.  A court must indulge, and a
defendant must overcome, a strong presumption that the challenged action might
be considered sound trial strategy under the circumstances.  Strickland,
466 U.S. at 689; Tong, 25 S.W.3d at
712.  A fair assessment of attorney
performance requires that every effort be made to eliminate the distorting
effects of hindsight and to evaluate the conduct from counsel’s perspective at
the time.  Strickland, 466 U.S. at 689. 
Thus, the presumption that an attorney’s actions were sound trial
strategy ordinarily cannot be overcome absent evidence in the record of the
attorney’s reasons for his conduct.  Busby v. State, 990 S.W.2d 263, 268–69
(Tex. Crim. App. 1999).

            During the trial court’s initial voir dire questioning of the venire, Ms. Campos gave a
series of answers indicating that she could not accept the principle that the
indictment is no evidence of guilt.[4] 

            Later in its voir
dire, however, the trial court discussed the concepts of presumption of
innocence and the State’s burden to prove guilt.  During his own voir
dire examination of the panel, appellant’s trial counsel reiterated that the
State must prove its allegations, and gave a hypothetical example on the point.

            Appellant’s amended motion for new
trial alleged numerous complaints of ineffective assistance by her trial
counsel, all of which he disputed in his affidavit that accompanied the State’s
response to appellant’s amended motion for new trial.  However, the amended motion for new trial did
not raise ineffective assistance of counsel in conjunction with biased jurors, voir dire, and peremptory challenges — issues appellant now
asserts.  An appellant who chooses to
litigate claims of ineffective assistance of counsel in the trial court must
present those claims to the trial court in order to preserve them for appeal; claims
not litigated are procedurally defaulted and may not be argued on appeal.  See
Henderson v. State, 962 S.W.2d 544, 558 (Tex. Crim.
App. 1997).  See also Robinson v. State, 16 S.W.3d 808, 809 (Tex. Crim. App. 2000).  

            Because failure to use a peremptory
challenge against Ms. Campos was not pled in her motion for new trial,
appellant’s trial counsel was not put on notice to answer the claim in his
response affidavit.  Further, appellant’s
amended motion for new trial was not presented and heard (as will be discussed
in issue seven).  The record therefore
contains no evidence as to why appellant’s trial counsel did not exercise a
peremptory challenge against Ms. Campos.

            Counsel may have agreed with the
prosecutor that Ms. Campos was rehabilitated. 
An appellate court must presume that trial counsel had a plausible
reason for his actions.  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999).  In responding to questions later posed during
voir dire, some prospective jurors answered by name
and/or numbers, and others did not.  Some
unidentified jurors expressed opinions favorable to appellant; Ms. Campos may
have been one of them.  Defense counsel
may have observed an indication, after he stated his jury voir
dire hypothetical, that led him to conclude that she was not biased, as her
initial quoted answers would indicate, or that she would be sympathetic on some
issue.

            To know defense counsel’s reasoning
concerning Ms. Campos would require us to speculate, which we cannot do.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  The
presumption of sound trial strategy has not been overcome.  Appellant’s third issue is overruled.

                              B.  Denial of Federal and State Constitutional
Rights

            Appellant’s issues four and five
assert that the seating of a juror who could not give her the presumption of
innocence denied her the constitutional right to an impartial jury guaranteed
by both the Sixth and 14th Amendments to the United States Constitution (issue
four) and Article I, Section 10 of the Texas Constitution (issue five).

            Appellant argues that Ms. Campos
should not have served on the jury because she was biased against appellant,
which deprived appellant of a fair and impartial jury.  Juror bias against a defendant does not
constitute an absolute disqualification from jury service.  Tex.
Code Crim. Proc. Ann., art. 35.19 (Vernon
1989).  Thus, a prospective juror can be
excused from service only by agreement, by challenge for cause, or by
peremptory challenge of either party.  Tex. Code Crim.
Proc. Ann., art. 35.15(b) (Vernon Supp.
2001); Tex. Code Crim.
Proc. Ann., art. 35.16(d) (Vernon 1989); Tex. Code Crim.
Proc. Ann., art. 35.16(c) (Vernon 2001).

            The trial court’s denial of
appellant’s challenge for cause is the basis for these constitutional
complaints, and the relevant evidentiary and procedural facts are the same as
those in issue three. 

            To preserve error in the denial of a
challenge for cause, an appellant must show on the record:  (1) a clear and specific challenge for cause,
articulating grounds; (2) that all peremptory challenges were exhausted; (3)
that appellant sought and was denied an additional peremptory challenge; and
(4) that an objectionable juror served.  Harris v. State, 790 S.W.2d 568, 581
(Tex. Crim. App. 1989).  Assuming appellant’s trial counsel made the
challenge for cause for a clearly articulated reason, he thereafter failed to
use an available peremptory challenge against Ms. Campos, and the issue was not
preserved for review.

            Appellant’s issues four and five are
overruled.

        C.  Failure to request and present evidence at a
motion for new trial hearing

            In her sixth issue, appellant
asserts she was denied effective assistance of counsel because her first
post-trial attorney[5]
failed to present a motion for new trial and obtain an evidentiary
hearing.  Attorney David Boyer timely
substituted for trial counsel, Andrew J. Lannie, and
filed a motion and an amended motion for new trial, each containing supporting
affidavits.  However, the record contains
no evidence that post-trial counsel pursued obtaining a hearing.  Tex. R.
App. P. 21.6.  The amended motion
for new trial was overruled by operation of law.  Tex. R. App. P. 21.8.

            Appellant asserts that a hearing on
her motion for new trial was necessary to develop the record concerning her
trial counsel’s lack of preparation, erroneous advice, and poor health.  Because her post-trial counsel neither
presented nor requested a hearing on either motion, she asserts he effectively
abandoned her, and prevented her from establishing her trial counsel’s
ineffective assistance.  We disagree.

            Because there is no evidence of
post-trial counsel’s reasons for not presenting the amended motion for new
trial, we would be required to speculate to assume this was not a strategic
decision. 

            Appellant’s amended motion for new
trial asserted: (1) the State failed to prove the prior convictions which
enhanced the DWI to a felony; and (2) her trial counsel provided ineffective
assistance.  The amended motion is
supported by affidavits from appellant, her mother, and an attorney formerly associated
with trial counsel, each exhaustive in its discussion of her trial counsel’s
alleged transgressions.   

            However, none of the allegations in
the amended motion for new trial set out facts entitling appellant to a new
trial.  For instance, appellant testified
at trial about her prior DWI convictions, and documentation of the convictions
was admitted as exhibits; the amended motion’s allegation that the State failed
to prove her prior conviction was therefore baseless.[6] 

 

 class=Section3>

            Appellant alleged ineffective
assistance by her trial counsel in failing to call additional witnesses,
failing to accept a plea bargain for probation (for which she was ineligible
due to her prior convictions), and failing to be prepared generally.  Her trial attorney’s lengthy controverting affidavit, submitted with the State’s
response, addressed strategic decisions behind each alleged act of ineffective
assistance, and showed that a hearing on these complaints would have been a
swearing match.  For example, trial
counsel explained that he did not call as witnesses the two people who drove
appellant home from the accident because he and appellant were concerned that
evidence would show that the two were on their way to appellant’s home to buy
drugs.  Trial counsel’s affidavit cites the
caselaw demonstrating appellant’s ineligibility for
probation, recounts his consultations regarding the State’s plea offer during
trial, and reiterates appellant’s repeated protestations of innocence.

            Appellant states she was abandoned
on appeal because her post-trial counsel did not present the motion for new
trial and conduct an evidentiary hearing on it, and that without a lawyer, she
was prejudiced.  Appellant was not
abandoned, but was at all times represented by counsel during this critical
post-trial period.  A notice of appeal, a
motion for new trial, and an amended motion for new trial were all timely filed
on her behalf by post-trial counsel.  See Smith v. State, 17 S.W.3d 660, 663
(Tex. Crim. App. 2000), citing Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).  Massingill v. State, 8 S.W.3d 733, 735–36 (Tex.
App.—Austin 1999, no pet.), is distinguishable because that defendant was left
without appointed counsel during the time for filing a motion for new trial.

            Appellant claims her post-trial
attorney rendered ineffective assistance of counsel by failing to present her
motion and amended motion for new trial. 
A reviewing court presumes that defense counsel’s actions are sound
trial strategy.  Jackson, 877
S.W.2d at 771.  To defeat the presumption
of reasonable professional assistance, allegation of ineffective assistance of
counsel “must be firmly founded in the record and the record must affirmatively
demonstrate the alleged ineffectiveness.”  McFarland, 928 S.W.2d at 500.  

 class=Section4>

Because the
record is silent as to why appellant’s post-trial counsel did not prosecute the
motions for new trial, finding defense counsel ineffective would require this
Court to speculate inappropriately regarding counsel’s actions.  See Stults v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th
Dist.] 2000, pet ref’d).

            “[A] substantial risk of failure
accompanies an appellant’s claim of ineffective assistance of counsel on direct
appeal . . . .  In the majority of
instances, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel.”  Thompson,
9 S.W.3d at 813–14; Tong, 25 S.W.3d
707, 714, n.10.  Faced with the State’s
response and her trial counsel’s detailed controverting
affidavit, appellant’s post-trial counsel may well have made a strategic
decision not to pursue a hearing.  

            Accordingly, appellant has not
rebutted the presumption that her post-trial attorney’s decision not to
prosecute the amended motion for new trial was within the range of competent representation.  Appellant’s sixth issue is overruled.

                         IV.  Lack of Hearing on Motion for New Trial

            In her seventh and final issue,
appellant asserts that, apart from her post-conviction counsel’s failures, the
trial court abused its discretion by not conducting an evidentiary hearing on
her amended motion for new trial and allowing it to be overruled by operation
of law.  When an accused presents a
motion for new trial raising matters that could entitle him to relief and that
are not determinable from the record, the trial court abuses its discretion in
failing to hold a hearing.  Reyes v. State, 849 S.W.2d 812, 816
(Tex. Crim. App. 1993).

            The mere filing of a motion for new
trial is insufficient to show “presentment.” 
Reyes v. State, 849 S.W.2d
812, 816 (Tex. Crim. App. 1993); Butler v. State, 6 S.W.3d 636 (Tex. App.—Houston [1st Dist.] 1999,
pet. ref’d).  
The record establishes that appellant timely

filed her motion and amended motion for
new trial, but it does not show that she presented
her amended motion by bringing it to the trial court’s attention or actual
notice.  To preserve error, a defendant
must not only file the motion
properly, but must also present the
motion to the trial court within the statutory time frame.  Id.; Carranza v. State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998).  On
appeal, the record must demonstrate that the movant
sustained his or her burden of actually delivering the motion to the trial
court, or bringing the motion to the trial court’s attention.  Carranza, 960 S.W.2d at 79–80; Sexton v. State, 51 S.W.3d 604 (Tex. App.—Tyler 2000, pet. ref’d).  Thus, the
trial court committed no error and did not abuse its discretion by failing to
hold a hearing on a motion for new trial not shown to have been presented to
it.  Enard v. State, 764 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.]
1989, no pet.) (holding a motion for new trial was not timely presented when
nothing in the record indicates trial court was on notice of desire for hearing
to present evidence, and motion for new trial was overruled by operation of
law).  Appellant’s seventh issue is
overruled.

V.  CONCLUSION

            We affirm the trial court’s
judgment.

 

                                                                        /s/        Lee Duggan, Jr.

                                                                                    Senior
Justice

 

Judgment
rendered and Corrected Opinion filed June 26, 2003.

Panel
consists of Justices Hudson, Fowler, and Duggan.[7]

Publish — Tex. R. App. P. 47.2(b).

 

 











            [1]  A person commits the offense of driving while
intoxicated if the person is intoxicated while operating a motor vehicle in a
public place.  Tex. Pen. Code Ann. §§ 49.04(a), 49.09(b).





            [2]  The Texas Penal Code defines “intoxication”
in pertinent part as: 

 

(A) not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body . . .

 

Tex. Pen. Code Ann. § 49.01(2)(A)(B). 


 





            [3]  The record is unclear as to whether defense
counsel actually challenged No. 37, Ms. Campos, or not.  The State appeared to challenge No. 37
initially, but then commented that “she might have been rehabilitated.”  Defense counsel, in dealing with panel
members numbers 27 through 39, stated, in part, “[34], I believe that person
should be excluded based on statements he believes she’s guilty; 35; 36, same
reason; 37; 38.  I may have gone one
over.  38, I believe, should be taken
off.”  The trial court responded, “State
and Defense challenge to 35 is granted. 
Defense challenge to 36 is granted. 
Challenge to 37 is denied.  And the defense challenge to 38 is
granted.  All right.”  (Emphasis added).  Whether or not a defense challenge to
No.  37 was made is uncertain.  The trial court may have understood the
reference to 37 to be the one “gone one over,” since the trial court sustained
the defense challenge to No. 38.





            [4]  To a series of questions by the court, Campos answered,
“ . . . If it’s a third time, I lean towards that she is guilty just from the
beginning.  Granted, I could be convinced
that she’s not guilty, but going into the jury, I’m already biased that she
is.”  When the trial court then asked if
she understood that “the State has to prove she’s guilty,” Ms. Campos answered,
“Right, but, from the beginning, I’m already thinking that [she’s
guilty].”  In response to further questions,
Campos responded
that in the event the State’s evidence wholly failed, “No, I probably won’t”
find her guilty just because of the indictment’s allegations.  When asked if she would base her decision on
the evidence that she heard in the courtroom, Campos answered,
“They would really have to mess up pretty bad.” 
When finally asked whether she would base her decision on the evidence,
or was she thinking, “because she’s here accused of this, you’re going to find
her guilty no matter what the State does?” Campos answered,
“That could be possible.” 

 





            [5]  Appellant has had three attorneys in this
case:  Andrew J. Lannie,
trial counsel, David K. Boyer, post-conviction counsel, and David R. Bires, appellate counsel. 





            [6]  Appellate counsel recognized this fact by not
presenting such an issue on appeal.





            [7]  Senior Justice Lee Duggan, Jr., sitting by
assignment.